# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROAS V. BARNETT, | Case No.  1:23-cv-01126-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM |
| v. | |
| HERNANDEZ, *et al.*, | (ECF No. 20) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Troas V. Barnett ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  On November 11, 2025, the Court screened Plaintiff's complaint and granted him leave to amend.  (ECF No. 15.)  Plaintiff's first amended complaint, filed on January 30, 2026, is currently before the Court for screening.  (ECF No. 20.)

## I.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

1

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    Plaintiff's Allegations[1]

Plaintiff is currently housed at Salinas Valley State Prison in Soledad, California.  Plaintiff alleges the events in the amended complaint occurred while he was housed at Corcoran State Prison ("Corcoran").  Plaintiff names as defendants: (1) H. Hernandez, Correctional Sergeant, Corcoran; (2) E. Silva, Correctional Lieutenant, Corcoran; (3) J. Perez, Associate Warden, Corcoran; (4) H. Moseley, Grievance Associate Director; and (5) CDCR.

Plaintiff alleges as follows:

Claim One

Plaintiff claims that his constitutional rights were violated by the RVR issued by Sergeant H. Hernandez, which led to a false disciplinary report and conviction.  Plaintiff claims he was not afforded the procedural protections required by the due process clause in connection with issuance and the hearing of a disciplinary report.  On September 14, 2022, Sergeant Hernandez wrote a disciplinary conduct report charging Plaintiff with a violation of 3005(c).  Written notice of the charge was not received until thirty days after the 9-14-2022 incident.  Inmate witnesses

---

[1] In the interests of brevity, the Court has attempted to limit its summary to Plaintiff's factual allegations, and not a summary of those allegations that are recitations of legal arguments or the elements of claims.

2

requested were not interviewed or questioned; the AVSS surveillance tape that recorded the incident was never produced at the interview.  The investigative report did not mention the request for the AVSS tape, or that it viewed the AVSS tape and the tape doesn't show what was reported.

Plaintiff contends the statements in the RVR of H. Hernandez were not substantially true.  Plaintiff identified Hernandez as the person who made the statement that was false.  The person knowingly or recklessly made false statements.  The statements were published in writing to someone other than Plaintiff.  Plaintiff claims that false statement harmed him:  mental anguish; emotional distress.  Plaintiff alleges Hernandez authored writings, recordings purporting to be fact and the publication was published to a third party.  Plaintiff contends the statement is Hernandez's fault and Plaintiff suffered harm caused to the subject of the statement.

As injury, Plaintiff asserts a loss of "disciplinary free clean time."  (ECF No. 20 at 3.)

Claim Two:

Defendant Sergeant H. Hernandez filed disciplinary charges against Plaintiff.  Plaintiff claims there is nothing in the reports to support the conclusion that Plaintiff deliberately disobeyed an order by Sergeant H. Hernandez.  Plaintiff claims that in the absence of any evidence, the RVR conviction for disobeying an order denied due process.  Although E. Silva, J. Perez, and H. Mosley did not commit the due process violations, they became responsible for them when they failed to correct them in the course of their supervisory duties and responsibilities and affirmed Plaintiff's disciplinary conviction.

On September 14, 2022, at Corcoran State Prison at 1540 hours, Sergeant H. Hernandez filed Rules Violation Report Specific Act:  Disobeying an Order Violation of C.C.R. Title #15 section 3005(b) obeying orders.  The RVR was not issued in fifteen days as written notice of the disciplinary violation.  On October 3, 2022, Investigative Services Unit Sergeant Muscleman conducted confidential interview with Plaintiff.  Plaintiff was denied the right to call witnesses at the hearing.  Plaintiff wanted Inmate Boseley and Thomas to be called as witnesses, and to review the BWC camera footage and the institution's AVSS cameras.  Plaintiff asserts he was denied the right to present witness testimony and the BWC AVSS in his defense.  Plaintiff received no

written statement of the reason for being found guilty only the circumstances of the violation the RVR Log # 000000007232066 Sergeant H. Herandez personnel # 25377 Hernandez reported/recorded the BWC as Log # B8A44F2E3AYF.  Sergeant Hernandez authored the Rules Violation Report and signed his name as the reviewing supervisor.  During the interview, Sergeant Muscleman produced the RVR for the first time.  Plaintiff asked how Muscleman could be investigating the circumstance of 9-14-2022, when Plaintiff never received a copy of the RVR. Muscleman then told Plaintiff all he had to do was ask for the RVR.

On October 11, 2022, Plaintiff finally received a copy of the RVR some 29 days after the occurrence.  Nowhere in the chrono RVR is it stated how effective communication was achieved, as the CDCR 7410 Accommodation directs staff to do in compliance with the Armstrong Remedial Plan.  Sergeant Hernandez did not include in his report a known fact that Plaintiff was with two other inmates on September 14, 2022.  The RVR included no summary of disciplinary procedures and inmate rights to appeal actions having an adverse effect.  The RVR for Plaintiff E #29521 listed Plaintiff's earliest minimum earliest possible release date as 5-19-2019.  Plaintiff filed Office of Grievances Appeal 000000306200.  Plaintiff DPP Disability Accommodation Summary of Offender Placement reflects disability assistance DPP Code DNH; CCCM5; Hearing Aids Alternative Method – Hearing:  Staff Need to Speak Loudly and Clearly.  Plaintiff requests the Court take judicial notice of adjudicative facts.  The Office of Grievances Decision Offender Grievance #306200 responded, denying the appeal stating "it is your responsibility to ensure the hearing aids are working properly to alert you in the event of an alarm."  (ECF No. 20 at 10.) Plaintiff sought Directors Level Review.  The appeal was denied, "claiming O.P. 1012 and that the hearings were turned down, further that it was [Plaintiff's] responsibility to ensure the hearing aids are in working order."  (*Id.*)  Offices of Grievances Appeal Log # 000000316456 was submitted to Hernandez's supervisor E. Silva, who denied the appeal claiming as reported by Hernandez that Plaintiff "remained standing after multiple direct orders you slowly proceeded to walk to another area of the yard and assumed a seated position.  Further that because the hearing aids were on low volume (block (w) wax, ear); it was the fault of [Plaintiff] and the appeal was denied."  (*Id.*)  Plaintiff alleges the prison authorities' retaliatory action did not advance

4

legitimate goals of the correctional institution and that in addition to retaliatory motive, defendants' action were arbitrary and capricious and unnecessary to the maintenance of order in the institution.

Plaintiff alleges that in filing grievances against Sergeant H. Herandez, Hernandez and Silva took adverse action against him, filed false disciplinary report charge against him. Plaintiff claims that as a result of the charge, Plaintiff lost parole date clean time opportunities. Plaintiff "alleges a connection between took adverse action shorty after; and in retaliation for Barnetts filing of grievances against Hernandez and Silva." (ECF No. 10 at 11.) Plaintiff pleaded the retaliatory acts were not a reasonable exercise of prison authority and that they did not serve any legitimate goals. Plaintiff argues that the retaliatory actions would have chilled or silenced a person of ordinary firmness by alleging more than minimal harms. The filing of false disciplinary reports against Plaintiff interfered with his parole hearing in that a conviction or disciplinary report, even if only a CDCR RVR 128, would result in future parole denials. Plaintiff contends that his Fourteenth Amendment rights to due process and procedural due process were violated in the absence of a legitimate penological reason for the adverse actions.

Plaintiff asserts a violation of the Equal Protection Clause. He contends the prison rule had the effect of discriminating against him and the discriminatory purpose or intent was at least part of the reason for the rule. Plaintiff asserts that he offers direct proof of discriminatory intent in the false charge narrative of Sergeant H. Hernandez. He argues discrimination is the only possible reason for the treatment he is receiving. He claims the segregation or discrimination was not done to advance a "compelling government interest" and the way the prison is achieving the interest is not "narrowly tailored." (ECF No. 20 at 12.) He asserts that similarly situated means there are no differences between two people that could explain the different treatment he received. Plaintiff argues a discriminatory purpose was the motivating factor in the administrative decision and discrimination on the basis of race in violation of the Fourteenth Amendment.

Plaintiff alleges that to prove Sergeant Hernandez illegally retaliated against him, Plaintiff contends that he showed:

> 1.)     Barnett was doing something he had a constitutional right (filing grievances lawsuits) which is protected conduct filing a section 1983 claim or grievance is an example of "protected conduct'" as part of your First Amendment rights.
>
> 2.)     What the prison officials did to you; which is called "adverse action", was so bad that it would stop an "average person" from continuing grievances and civil suits.
>
> 3.)     There is a "causal connection." That means the officer did what they were doing because of what Barnett was doing, or in legal terms:  the prison's official adverse action was directly related to your protected conduct.  Where a prisoner was able to prove that there was a policy or custom of retaliating against prisoners who helped other prisoners exercise their right of access to the courts.  The retaliation violated their First Amendment rights . . . it is also  federal crime for state actors (the prison officials to threaten or assault witnesses in federal litigation 18 U.S.C. § 1512(a)(2).

(ECF No. 20 at 13.)

Plaintiff asks this court to grant a preliminary injunction to prevent him from suffering irreparable harm while awaiting disposition of the case.  Plaintiff claims that he continues to be affected by CDCR's deficient policies with regard to his "CNH" hearing impaired disability.  Plaintiff also seeks expungement of the RVR from his file and restoration of disciplinary free clean time.

As injury, Plaintiff claims he "lost disciplinary free clean time and the opportunity present to the parole board; a disciplinary free period.  The report contributed to a five year parole denial of five years."  (ECF No. 20 at 6.)

Claim Three

Plaintiff asserts supervisory liability, violation of the Eighth Amendment, and violation of the Americans with Disabilities Act.  He alleges that supervisory liability should attach to E. Silva, J. Perez, and H Mosely.  Plaintiff claims "E. Silva had actual knowledge of the occurrence of 9-14-2022 made disciplinary guilt findings; after reviewing Mendez and Diaz's RVR E. Silva breached a duty to Plaintiff which was proximate cause of the injury.  Even if not directly involved in unconstitutional conduct E. Silva can be liable in an individual capacity for his own culpable action or inaction in training; supervision; control of his subordinates; and for acquiescence in the constitutional deprivation or conduct that showed a reckless or callous indifference to the right so others. i.e. inconsistent determination based on the same evidence."

(ECF No. 20 at 15-16.)

Plaintiff alleges J. Perez as reviewer knew or reasonably could have known of his subordinates' ongoing constitutional violations; and of the failure to provide security/accommodation at the prison.  J. Peraz had lax or no supervision by his subordinates' failure to implement indicated policies and procedure regarding the Armstrong Remedial Plan.  J. Perez in failing to act to prevent his subordinates' ongoing unconstitutional conduct acquiesced condoned, ratified a custom, practice, or policy of ongoing misconduct by his subordinates.  Plaintiff alleges that H. Moseley, a reviewing authority, became aware or should at least have taken corrective actions to prevent repeated incidents of derelictions of duty by his subordinates.

Additionally, Plaintiff alleges that the A.R.P. only allows a one for one battery exchange for hearing aid batteries; and provides a yellow disability vest as an alternative to operable hearing aids as an appropriate alternative.  Plaintiff asserts that the policy amounts to deliberate indifference on the part of the municipality.  Plaintiff further asserts that there is evidence about deficiencies to training and supervision.  CDCR has had training or procedures in place to deal with particular problems surrounding inmates with disabilities.  There is evidence of a custom of violating the written policies or a systemic failure to enforce written policies.

Plaintiff forwards a claim for violation of the Americans with Disabilities Act.  He asserts that he is a state prisoner who is permanently hearing impaired in both ears.  He has filed an action against the State, CDCR, and several prison officials concerning alleged conditions of confinement.  He asserts claims under section 1983 and Title II of the ADA.  He seeks both injunctive relief and damages against all defendants.  He included claim allegations to the effect that prison officials had deliberately refused to accommodate the prisoner's disability related needs in such matters as speaking loudly and clearly and effective communication.

Plaintiff seeks compensatory and punitive damages, along with injunctive relief.

**III.   Discussion**

**A.  Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations

are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Plaintiff's amended complaint is not a short and plain statement of his claims. It does not clearly state what happened, when it happened, and who was involved. It also fails to set forth sufficient factual matter to state a claim to relief that is plausible on its face. Plaintiff's amended complaint is disjointed, prolix, and difficult to understand. It includes extensive argument, legal conclusions, and conclusory assertions, which are not sufficient to meet the Rule 8 pleading standard.

### B. Supervisory Liability

Insofar as Plaintiff is attempting to sue Defendants Silva, Perez, and Moseley based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates[.]"  *Starr*, 652 F.3d at 1208.  However, a failure to train theory can be the basis for a supervisor's liability in only limited circumstances, such as where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact.  *See Canell v. Lightner*, 143 F.3d 1210, 1213–14 (9th Cir. 1998).  To impose liability under a failure to train theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation.  *Id.* at 1214; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

Plaintiff fails to allege that any of the supervisory defendants directly participated in the alleged violations.  Plaintiff does not make a sufficient showing of any personal participation, direction, or knowledge on these defendants' part regarding any other prison officials' actions.  Plaintiff must do more than allege, in a conclusory fashion, that any constitutional violation was the result of any specific official policy or custom, that insufficient training was provided, or that the allegedly inadequate training caused a constitutional violation.

Further, as discussed below, Defendants Silva and Moseley cannot be held liable for their denial of Plaintiff's administrative grievances regarding the September 14, 2022 incident and Defendant Hernandez's issuance of the RVR.  (*See* ECF No. 20 at 37-38, 39-40, 41-42. 43-44.)

**C.  First Amendment**

1.    Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation.  The mere threat of harm can be an adverse action."  *Watison*, 668 F.3d at 1114 (internal citations omitted).  A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred.  *Id.*  The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities.  *Rhodes*, 408 F.3d at 567–68.  The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal."  *Watison*, 668 F.3d at 1114.  A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution."  *Id.*

The amended complaint appears to allege that Defendants Hernandez and Silva filed a false disciplinary report charge against him in retaliation for filing grievances against Defendant Hernandez.  However, Plaintiff provides only a conclusory allegation that retaliation was the motivating factor behind the RVR.  Plaintiff does not specify when he filed grievances against Defendant Hernandez, and the exhibits attached to the complaint suggest that Plaintiff filed

10

grievances *after* issuance of the RVR by Defendant Hernandez.  (*See* ECF No. 20 at 39-40.) There is no indication that Defendant Silva filed a false disciplinary charge against Plaintiff only that Defendant Silva reviewed Plaintiff's grievance alleging the RVR issued by Defendant Hernanez was fraudulent.  (*Id.*)  As currently pled, Plaintiff fails to state a cognizable claim for retaliation.

                    2.      Grievance Process

Plaintiff's claims against Defendants Silva and Moseley are premised on their review and denial of his grievances.  (*See* ECF No. 20 at 37-38, 39-40, 41-42, 43-44.)  Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed.  *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.19 88).  The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993); *see also Wright v. Shannon,* No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment).  Denial or refusal to process a prison grievance is not a constitutional violation.  *Rushdan v. Gear,* No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018).  Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening or processing of his grievances or complaints.

**D.  Eighth Amendment**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ."

11

*Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

The nature of Plaintiff's Eighth Amendment claim is unclear. As discussed below, to the extent Plaintiff's Eighth Amendment claim is based on allegations that Defendant Hernandez filed a false RVR, this is not sufficient to state a cognizable claim for relief.

### E. Eleventh Amendment

Plaintiff has named CDCR as a defendant. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

As CDCR is immune under the Eleventh Amendment, Plaintiff cannot pursue claims for damages against the State in this action.

Plaintiff also may not pursue his claims for monetary damages against the named defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991).

### F.  Fourteenth Amendment

#### 1.    Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

Insofar as Plaintiff alleges that he was discriminated against due to his disability, "the disabled do not constitute a suspect class" for equal protection purposes.  *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440).

Plaintiff also alleges that he was discriminated against due to his race.  However, Plaintiff provides no factual allegations to support his conclusory statements regarding discrimination based on race.  The amended complaint does not allege that any defendant acted or failed to act in any manner due to Plaintiff's race.  Plaintiff's conclusory statements about discrimination do not suffice.  Plaintiff also appears to allege that similarly situated individuals were treated differently.

13

However, Plaintiff provides no factual allegations to support his conclusory statements.

Therefore, the Court finds that Plaintiff has not stated a cognizable equal protection claim.

### 2. Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum procedural requirements that must be met in such proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995).

Although not entirely clear, it appears that Plaintiff alleges a violation of his due process rights based on not receiving a copy of the September 14, 2022 RVR until October 11, 2022. However, due process is satisfied if Plaintiff was provided written notice of the charges at least 24 hours before the time of the RVR hearing. Critically, however, Plaintiff does not allege that a hearing was held on the RVR, and it does not appear that he can do so. According to the exhibits attached to the amended complaint, Plaintiff received a Counseling Only RVR and the matter was not referred to a hearing officer. (*See* ECF No. 20 at 35-36.)

Plaintiff also claims hearing violations based on the denial of his right to call witnesses in

14

his defense, to review the AVSS and video footage, and the failure to receive a written statement of the reason for being found guilty.  However, in the absence of a disciplinary hearing or proceeding, Plaintiff cannot maintain a cognizable claim for violation of the Due Process Clause.

### G.  Americans with Disabilities Act ("ADA")

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz,* 609 F.3d 1011, 1021 (9th Cir. 2010); *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004); *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Plaintiff does not state a viable claim under the ADA.  Plaintiff does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of his disability, or that he was subjected to any type of discrimination by reason of his disability.

Additionally, to the extent Plaintiff sues the defendants in their individual capacities, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

**H.  False Rules Violation Report**

The creation of false evidence, standing alone, is not actionable under § 1983.  *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).  Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff."  *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Plaintiff's amended complaint does not state a cognizable claim for the allegedly false statements made in the September 2022 RVR.

**I.  Prison Regulations**

To the extent that any defendant has not complied with applicable state statutes or prison regulations, these deprivations do not support a claim under § 1983.  Section 1983 only provides a cause of action for the deprivation of federally protected rights.  *See, e.g.*, *Nible v. Fink*, 828 F. App'x 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *4 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California

16

Code of Regulations).

### J. Parole Consideration

To the extent Plaintiff is seeking early parole, Plaintiff cannot maintain a constitutional violation based on denial of early parole consideration, because Plaintiff has no protected liberty interest in parole. There is no right under the U.S. Constitution to be conditionally released before the expiration of a valid sentence. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (there is no federal constitutional right to parole). It follows that there is no constitutional right to parole consideration. Deprivation of any rights to early parole therefore cannot be vindicated here. *See* 42 U.S.C. § 1983 (only deprivation of rights secured by federal law is actionable under Section 1983); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (state law issue cannot be transformed into federal law issue by merely invoking due process).

### K. Armstrong Remedial Plan

Plaintiff appears to allege violation of the *Armstrong* remedial plan.

It is well-settled that the remedial orders issued in *Armstrong* do not provide an independent cause of action under § 1983 as the orders do not create or expand on a plaintiff's constitutional rights. *See Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights and cannot serve as a substantive basis for damages); *Montecastro v. Newsom*, No. 1:20-CV-00689 SAB(PC), 2020 WL 6484097, at *5 (E.D. Cal. Nov. 4, 2020) ("[A]ny violations of the remedial plan developed in *Armstrong* do not provide an independent basis for relief in this court. Violations of the *Armstrong* Remedial Plan must be addressed *through the procedures provided by that plan.*"), report and recommendation adopted, No. 1:20-CV-00689 NONE SAB (PC), 2020 WL 7319423 (E.D. Cal. Dec. 11, 2020).

### L. Injunctive Relief

Insofar as Plaintiff seeks injunctive relief, any such request is now moot. Plaintiff is no longer housed at Corcoran State Prison, where he alleges the incident at issue occurred. Therefore, any injunctive relief he seeks against the officials at Corcoran State Prison is moot.

*See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

**IV.    Conclusion and Recommendation**

The Court finds that Plaintiff's amended complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**May 27, 2026**__          ____/s/ *Barbara A. McAuliffe*____
                                                UNITED STATES MAGISTRATE JUDGE

18